AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED

FEB 28 2020

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| IGNACIO GONZALEZ (age 25) | ) | H20-0421M |
| CARLOS RUIZ-PAZ (age 26) | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 27, 2020 in the county of Harris in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 USC 846 | Conspiracy to Posses With Intent to Distribute approximately 9.6 kilograms of methamphetamine; |
| Title 21 USC 841(a)(1) | Possession with intent to distribute approximately 18.3 kilograms of methamphetamine. |

This criminal complaint is based on these facts:

see attached Affidavit in Support of Criminal Complaint

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jason Havemann, Special Agent-DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2-28-20

_____
*Judge's signature*

City and state: Houston, Texas

Nancy K. Johnson, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| vs. § | |
| § | **Magistrate No. _____** |
| **IGNACIO GONZALEZ (age 25)** § | |
| **CARLOS RUIZ-PAZ (age 26)** § | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jason Havemann, your affiant, being duly sworn, depose and state the following:

I am a Special Agent assigned to the Drug Enforcement Administration (DEA) in Houston, Texas. I have been employed as a federal law enforcement officer since August 2008. I have knowledge and experience in various types of investigations, to include narcotics trafficking and bulk-cash smuggling investigations.

The information enumerated in the paragraphs below, furnished in support of this Affidavit, is derived from my own observations, and that of other law enforcement officers.

From in or about February 2020, DEA Agents and Houston Police Department (HPD) Officers began an investigation of IGNACIO GONZALEZ (GONZALEZ). GONZALEZ was believed to be a methamphetamine trafficker in the Houston, Texas area. A DEA Confidential Source (CS) informed investigating agents and officers that GONZALEZ was capable of selling kilogram-quantities of methamphetamine.

On February 26, 2020, GONZALEZ began negotiating via telephone with the DEA Confidential Source (CS) regarding the sale of kilogram-quantities of methamphetamine. The CS was operating under the request and direction of investigating authorities, and based upon the telephone conversations between GONZALEZ and the CS, GONZALEZ believed he would be selling methamphetamine to other buyers represented by the CS. In actuality, and unbeknownst to GONZALEZ, the other buyers were undercover officers with HPD. The telephone conversations and text messages between the CS and GONZALEZ were consensually recorded. During the telephone negotiations, GONZALEZ agreed to meet with the CS and his buyers the following morning, February 27, 2020, at approximately 11:00 a.m., to complete the transaction.

On February 27, 2020, and as coordinated by investigating authorities with the assistance of the CS, GONZALEZ telephonically communicated directly with an HPD undercover officer (UC) regarding the upcoming methamphetamine purchase. GONZALEZ directed the HPD UC to an apartment complex located at 12550 John F. Kennedy Boulevard in Houston. Surveillance personnel comprised of other DEA Agents and HPD Officers, including Affiant, commenced surveillance near the apartment complex. At approximately 11:50 a.m., Affiant observed a black Ford F-150 enter the apartment complex parking lot. The Ford F-150 bore Texas License Plate No. BXP 2177, and it was driven by a person later identified as GONZALEZ. Within minutes of

GONZALEZ' arrival, two (2) HPD UC's arrived in another vehicle, and they entered the apartment complex parking lot.

Following their arrival, the HPD UC's began talking to GONZALEZ while they were standing near their respective vehicles. Shortly thereafter, a person later identified as CARLOS RUIZ-PAZ (RUIZ) walked towards GONZALEZ and the HPD UC's. When he met with them, RUIZ handed a plastic trash bag to the UC's, in which was contained a separate plastic storage container. The contents of the plastic storage container consisted of a crystalline substance, which, in Affiant's and the HPD UCs' collective experience, had the appearance of crystal methamphetamine. The gross weight of the methamphetamine was later determined to be approximately 1.2 kilograms. The UC's gave GONZALEZ $3,800 cash money in exchange for the crystal methamphetamine. The UC's further stated to GONZALEZ that they would depart and check the quality of the methamphetamine delivered, after which they would call GONZALEZ to see if any additional quantities could be purchased. The UC's stated they would be calling GONZALEZ approximately thirty (30) minutes later. The UC's departed the apartment complex in their vehicle. GONZALEZ departed the apartment complex driving the aforementioned Ford F-150. RUIZ returned on foot to somewhere within the apartment complex. Surveillance personnel followed GONZALEZ to the Greenspoint Mall, at which GONZALEZ exited his vehicle and entered the mall.

At approximately 1:00 p.m. the same day (February 27th), GONZALEZ spoke with the HPD UC's via telephone, and he directed the UC's to meet him at 4307 Charriton Drive in Houston to complete another transaction for five-and-a-half (5½) additional kilograms of crystal methamphetamine. The 4307 Charriton Drive location was adjacent to the aforementioned apartment complex. GONZALEZ and the HPD UC's subsequently met at the 4307 Charriton Drive location. During this subsequent meeting, GONZALEZ further stated that the additional quantity of methamphetamine would delivered to their location. GONZALEZ also told the UC's that he had sold approximately one-hundred (100) kilograms of methamphetamine in the past month and "robbed" another person for over "one-thousand (1,000) pills."

While GONZALEZ and the UC's were waiting at the 4307 Charriton Drive location, surveillance personnel observed RUIZ depart from building 13 of the aforementioned apartment complex, and he was seen carrying a large plastic trash bag. He was further seen placing the plastic trash bag inside a Mini Cooper automobile, after which RUIZ drove to the 4307 Charriton Drive location. Upon RUIZ' arrival to meet with GONZALEZ and the UCs, GONZALEZ and RUIZ were arrested by uniformed law enforcement personnel, as previously planned by investigating authorities.

A subsequent search of RUIZ' vehicle resulted in the recovery and seizure of a plastic trash bag containing five (5) additional plastic storage containers similar in appearance to the first-delivered plastic storage container. Further, each of the five (5) additional storage containers contained a crystalline substance, which, in Affiant's experience, had the appearance of crystal methamphetamine. The plastic trash bag also contained an additional one (1)-gallon-sized storage bag, which also contained an additional quantity of a crystalline substance, which, in Affiant's experience, had the appearance of crystal methamphetamine. The total gross weight of the crystal

methamphetamine recovered from the Mini Cooper automobile driven by RUIZ vehicle was later determined to be approximately seven (7) kilograms.

Prior to the first purchase of the 1.2-kilogram-quantity of crystal methamphetamine, DEA investigating agents photocopied the serial numbers of thirty-eight (38) one-hundred-dollar ($100) bills subsequently used as the purchase money. At the time of GONZALEZ' arrest, he was in possession of six (6) of the one-hundred-dollar ($100) bills, as later determined by matching the serial numbers to six (6) of those previously photocopied. The remaining $3,200 was never found or recovered.

GONZALEZ was advised of his Miranda warnings, and he exercised his constitutional right to remain silent and speak to an attorney first before questioning. No further attempts were made to speak to GONZALEZ.

RUIZ was advised of his Miranda warnings (in the Spanish language), and he agreed to voluntarily speak with investigating authorities. RUIZ stated, among other things, that he resided in apartment unit "316" of the aforementioned apartment complex, and he also orally consented to a search of the residence. RUIZ further stated there were no other occupants or residents of the apartment unit. RUIZ possessed in his pocket a key to the apartment unit. Investigating authorities determined that RUIZ' apartment unit was actually unit "1316," which was further verified by use of the aforementioned key in RUIZ' possession, as it unlocked the front door of the unit 1316. A search of the residence resulted in the recovery and seizure of yet another additional quantity of a crystalline substance, which, in Affiant's experience, had the appearance of crystal methamphetamine. This additional quantity of methamphetamine was later determined to be approximately 1.47 kilograms. Also recovered from the residence was a small amount of marijuana and a pistol.

Jason Havemann, Special Agent
Drug Enforcement Administration

SWORN TO and SUBSCRIBED before me this 28 day of Feb, 2020.

HON. NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

3